**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ANGELA GORMAN,

      Plaintiff,

vs.                                                                    No. 1:14-CV-00089-GBW-KK

S/W TAX LOANS, INC.,

      Defendant.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

This matter is before the Court on Defendant's Motion to Stay Litigation and Compel Arbitration of Individual Claims and Motion to Dismiss Class Action Claims (*doc. 8*) and the attendant briefing (*docs. 17, 21, 24, 33*).  The Court finds that Plaintiff signed the contract containing the arbitration provision and agreed to that provision. Because the Court holds that two sentences of the provision interfere with the effective vindication of her statutory rights, those sentences will not be enforced.  However, because the Court finds that the invalid sentences are severable, the remainder of the arbitration provision is enforceable.  The enforceable portion contains a bar to Plaintiff acting as a class representative.  Therefore, with the invalid sentences stricken, the Court will GRANT Defendant's Motion to Stay Litigation and Compel Arbitration of Individual Claims and to Dismiss Class Action Claims (*doc. 8*).

I.    **PROCEDURAL POSTURE**

Plaintiff Angela Gorman initiated this putative class action suit against Defendant S/W Tax Loans, Inc., a tax refund loan business, for alleged violations of the Truth in Lending Act ("TILA"), New Mexico Unfair Practices Act, and Federal Rebate Act.  *Doc. 1* at 8.  Defendant seeks to dismiss Plaintiff's class action claims because they are barred by the arbitration provision in the parties' agreements (*doc. 24*, Exs. 1, 2), and to compel the resolution of her individual claims through binding arbitration as provided in those agreements.  *Doc. 8.*

Plaintiff argues that the arbitration provision should not be enforced because she did not agree to it and, even assuming she did, certain terms in the arbitration provision are unconscionable or unenforceable and cannot be individually severed.  *Docs. 24, 33.* Plaintiff requests that the entire arbitration provision be jettisoned and that Defendant's motion be denied accordingly.  *Doc. 33.*

At a hearing held on November 21, 2014, the parties presented evidence and argument on the factual and legal matters at issue in the instant motion.  *Doc. 46.*  The Court held telephonic hearings on December 9, 2014, and January 20, 2015, where further argument was heard.  *Docs. 50, 53.*

II.   **FACTUAL BACKGROUND**

Defendant provides "tax refund anticipation loans [ ] to qualified applicants." *Doc. 6* at ¶ 1.  On February 6, 2013, Plaintiff took out such a loan from Defendant "at an

interest rate disclosed as a 162.2% Annual Percentage Rate." *Doc. 1* at ¶ 19-23.  She

received a $1,000 cash advance.  *Id.* at ¶ 25.   To receive this loan, Plaintiff completed a

Loan Agreement & Disclosure Statement ("Loan Agreement").  *Id.* at ¶¶ 23, 28; *doc. 47*,

Ex. 1.  Later that month, on February 18, 2013, Plaintiff took out a second loan and

received a cash advance of $300.00.  *Doc. 1* at ¶ 26.  She completed a second Loan

Agreement at that time.  *Id.* at ¶ 36; *doc. 47*, Ex. 3.

   The two Loan Agreements are identical.  They consist of a full front page with a

signature line for the borrower near the bottom.  They incorporate a RAL[1]

Authorization and Certification Agreement ("RAL Agreement") which is printed on the

back of the page.  *Doc. 47*, Exs. 1 & 3.  The RAL Agreement consists of nine numbered

sections with a signature line for the borrower[2] preceded by a paragraph of

understanding.  *Id*., Ex. 1, at 2 & Ex. 3, at 2.  Section 7 of the RAL Agreement is the

arbitration provision.  It provides, among other things, that "any claim or dispute . . .

including constitutional, statutory, common law, regulatory, and equitable claims . . . in

any way relating to the RAL Agreement or such similar agreements (including SW Loan

Agreements) . . . shall be exclusively resolved, upon the election of either party, by

binding arbitration pursuant to this arbitration provision and the applicable rules of the

---

[1] "RAL" stands for Refund Anticipation Loan.  *Doc. 47*, Ex. 1, at. 1 and Ex. 3, at. 1.
[2] Additionally, there are lines for a secondary borrower's signature as well as the initials of witnesses.
*Doc. 47*, Ex. 1, at. 2 and Ex. 3, at. 2.

American Arbitration Association ("AAA") in effect at the time the claim is filed[3] and the AAA Consumer Due Process Protocol."[4]  *Id.*  The provision outlines how to obtain rules and forms from the AAA, states that the arbitration will take place in the Farmington, N.M. district, and acknowledges that the parties have a right to litigate claims in court, but prefer arbitration.  *Id.*  Section 7 of the RAL Agreement also states, "I acknowledge that I will not have the right to participate as a representative or member of any class of claimant pertaining to any claim subject to arbitration."  *Id.*  Finally, the RAL agreement contains a severability clause that states, "If any provision of this RAL Agreement is deemed invalid, such invalidity shall not affect any other provision or part of this RAL agreement."  *Id.*

## III.   Plaintiff Agreed To The "RAL Agreement"

Plaintiff does not dispute the genuineness of the signatures at the bottom of the Loan Agreements, but asserts that the signatures on the reverse side of the page, after the RAL Agreements, are forgeries.  *Doc. 21* at 1.  As such, she disputes that she entered into the RAL Agreement which includes the arbitration provision.

---

[3] The applicable AAA rules currently in effect are the *Consumer Arbitration Rules.*  The *Consumer Arbitration Rules* govern where the parties have provided for arbitration by the AAA in a consumer agreement. A consumer agreement is defined as "an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions for the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices." *Consumer Arbitration Rules*, American Arbitration Association, at 9 (September 1, 2014) *available at* https://www.adr.org/consumer [hereinafter "*CAR*"].

[4] *Consumer Due Process Protocol*, American Arbitration Association (April 17, 1998), *available at* https://www.adr.org/consumer [hereinafter "*CDPP*"].

The Federal Arbitration Act (FAA) provides that agreements to arbitrate claims arising from contracts or transactions involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that, if the formation of an agreement to arbitrate is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975 (10th Cir. 2014) ("The Act requires courts process the venue question quickly so the parties can get on with the merits of their dispute in the right forum. It calls for a *summary trial*—not death by discovery."). Normally, "the Act's summary trial can look a lot like summary judgment," but where disputed facts exist, the FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues." *Howard*, 748 F.3d at 978 (quotations and citations omitted). Where, as here, no jury trial has been demanded, the court resolves any factual issues surrounding contract formation. 9 U.S.C. § 4. "Once the facts are clear, courts must then apply state contract formation principles and decide whether or not the parties agreed to arbitrate." *Howard*, 748 F.3d at 977.

Under New Mexico Law, "[f]or a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Heye v. Am. Golf Corp., Inc.*, 80 P.3d 495, 499 (N.M. Ct. App. 2003) (citations omitted). "A party may manifest her assent to an offer by written or spoken words or

by other acts or failures to act."  *THI of New Mexico at Vida Encantada, LLC v. Archuleta*,

2013 WL 2387752, *7 (D.N.M. 2013) (unreported) (citing *DeArmond v. Halliburton Energy*

*Services, Inc.*, 81 P.3d 573, 578 (N.M. Ct. App. 2003)).  Acceptance, however, "must be

clear, positive, and unambiguous."  *DeArmond*, 81 P.3d at 578 (internal quotations and

citations omitted).   "[T]he party seeking to enforce an arbitration agreement bears the

burden of showing that the agreement exists and that its terms bind the other party."

*Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165, 1169, (W.D. Wash. 2013).  Thus,

Defendant has the burden of demonstrating by a preponderance of the evidence that

the parties agreed to the RAL Agreement that includes the arbitration provision.

Applying these standards, the Court finds that Plaintiff entered into the "RAL

Agreement" contract, including its arbitration provision.

### A.    Plaintiff signed both RAL Agreements

Plaintiff denies signing her name to the signature line at the end of the February

6, 2013, and the February 18, 2013, RAL Agreements.  *See doc. 21*, Ex. B; *Doc. 54* at 62-63.

Having reviewed the evidence and testimony, the Court finds that she did sign both

RAL agreements.

The first basis for the Court's finding is a comparison on relevant signatures.

Notwithstanding the absence of expert testimony, as the trier of fact the Court can

identify and compare signatures.  *See* FED. R. EVID. 901(b)(3).  Having compared the

signatures acknowledged by Plaintiff as genuine to the disputed signatures, the Court

finds them to be written by the same person.  *See docs. 47 & 48*, Exs. 1-12; *see also Ex. 1*

(compilation of all signatures in evidence attached hereto).  While small differences can

be discerned, they are differences one expects to see between one genuine signature and

the next.[5]  Moreover, the slight differences also exclude the possibility of one method of

forgery – tracing.  The Court concludes that, for an individual to produce forged

signatures of this quality, it would require a significant investment of time and practice.

The facts of the instant case make such an investment by Defendant's employee very

unlikely.

Second, the Court finds no reasonable motivation for the employee to forge

Plaintiff's signature.  It is clear that, for a loan to be processed, some signature must

appear on the RAL Agreement signature line.  *Doc. 54* at 18-19.  Nonetheless, it is

undisputed that Defendant's employees did not work on commission or otherwise

benefit on the basis of number of loans issued.  Consequently, there is no direct gain to

an employee to get loans issued.  Moreover, Ms. Peshlakai testified that in over eight

years of working at Southwest Tax Loans, she never had any applicant refuse to enter

into the loan when the arbitration clause was highlighted for them.  *Doc. 54* at 19, 31.

She did recall one person who expressed some resistance, but, when it was explained

that if he did not sign the RAL Agreement with the arbitration provision the loan would

not be issued, he signed.  *Doc. 54* at 19.  The Court finds this testimony credible.

---

[5] On this point, the Court excludes the signatures from the driver's license and social security card because they are dramatically different from the rest, including signatures Plaintiff concedes are genuine. The uniqueness of these signatures is unsurprising given the different circumstances of their creation.

Consequently, even if an employee was especially eager to issue a loan, they would not be particularly worried that highlighting the arbitration agreement would scuttle the deal.

This logic leads to the third basis for the Court's finding – Plaintiff's signature appears on both RAL agreements.  Given the lack of a direct pecuniary interest on the part of the employee, the only apparent explanation for an employee to forge Plaintiff's signature would be that he forgot to follow the policy and failed to review the RAL Agreement with Plaintiff.  He could have realized the failure after she left and, wanting to conceal his error from his employer, forged the signature.  The flaw in this hypothetical is the signature on the second RAL Agreement.  It seems quite unlikely that, having forgotten to have Plaintiff sign the back page on the first loan application on February 6, 2013, the employee made the same error when Plaintiff returned twelve days later and applied for a second loan.

For all these reasons, the Court finds that Plaintiff signed both RAL agreements.[6]

## B.     Plaintiff entered into the RAL Agreement contract including its arbitration provision

The finding that Plaintiff signed her name on the RAL Agreements does not end the matter *per se*.  As noted above, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent.  There appears to be no dispute as to

---

[6] At the evidentiary hearing, Plaintiff testified that she did not sign those provisions.  *Doc. 54* at 62-63. The Court's finding in no way implies an adverse credibility finding against Plaintiff.  The Court simply concludes that she had no independent recollection of signing in those places.

whether the requirements of offer and consideration are met here.  However, the Court must still determine if her signatures demonstrated acceptance and mutual assent.  The Court finds that they do.

Of course, signing one's name to a contract is a well-known method of expressing acceptance and assent to its terms.  *See DeArmond v. Halliburton Energy Serv., Inc.*, 81 P.3d 573, 579 (N.M. 2003) ("New Mexico law [imposes] a duty upon the parties to a contract to read and familiarize themselves with its contents before they sign and deliver it.").  Admittedly, there can be little doubt that the RAL Agreement is a contract of adhesion.  Moreover, the back page is written in smaller than normal type.  However, these facts do not overcome the plain language of the contract to which Plaintiff signed her name.  *See Padilla v. State Farm Mut. Auto Ins. Co.*, 68 P.3d 901, 907 n.3 (N.M. 2003) (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del.1989) ("The fact that a contract is adhesive does not give rise to a presumption of unenforceability.")).

The RAL Agreement, while written in small type, is only one page long with the signature line at the bottom.  The arbitration provision is laid out in detail.  Then, it is summarized in all capital letters: "I acknowledge that I have the right to litigate claims in court before judge or jury but I prefer to resolve any such claims through arbitration and hereby knowingly and voluntarily waive my rights to litigate such claims in court before a judge or jury, upon election of arbitration by SW or me."  *Doc. 47*, Ex. 1, at 2 & Ex. 3, at 2.  Approximately two inches lower, in the paragraph immediately above the

signature line, the text states: "I further acknowledge that I have read, understand, and agree to each of the terms of this RAL Agreement including Section 7 of this RAL Agreement relating to arbitration." *Id*. Moreover, even on the front page in the Loan Agreement, the RAL Agreement is acknowledged. Only six lines above her signature on the Loan Agreement is the following text: "By signing below, I acknowledge that I have read, fully understand and agree to the terms of this Loan Agreement and the terms, conditions, and provisions of the RAL Authorization and Certification Agreement (on the reverse side), including the arbitration provision that will apply in the event of a dispute." *Doc. 47*, Ex. 1, at 1 & Ex. 3, at 1.

Under these circumstances, Defendant has met its burden of establishing Plaintiff's acceptance and mutual assent to the RAL Agreements and the arbitration provision within.

## IV.    IMPROPER TERMS WITHIN ARBITRATION PROVISION

Notwithstanding that the RAL Agreement was entered into by Plaintiff, the question remains whether its arbitration provision should be enforced according to its terms. Plaintiff contests the validity of the following three terms of the arbitration provision.[7] First, it limits damages to "actual compensatory, economic damages." *Id.*

---

[7] The arbitration provision here states that "any claim in any way relating to the RAL Agreement … including the validity or enforceability of this arbitration provision or any part thereof … shall be exclusively resolved … by binding arbitration pursuant to this arbitration provision…." *Doc. 47*, Ex. 1, at 2 & Ex. 3, at 2. It would appear that such language would qualify as a "delegation clause" as described in *Rent-A-Center v. Jackson*, 561 U.S. 63 (2010). Consequently, assuming the delegation clause was valid, the Court would be required to send the case to arbitration on the issues regarding the validity of the

Second, it provides that each party pay their own attorney's fees.  *Id.*  Third, it requires

that the parties equally share in the fee of the arbitrator.  *Id.*  Plaintiff contends that these

terms violate the effective vindication doctrine.[8]

The FAA "establishes a liberal federal policy favoring arbitration agreements."

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (quotations and citations

omitted).  However, pursuant to the effective vindication doctrine, courts have refused

to enforce arbitration agreements, or terms thereof, if it "operate[s] . . . as a prospective

waiver of a party's right to pursue statutory remedies."  *Am. Exp. Co. v. Italian Colors*

*Rest.*, 133 S. Ct. 2304, 2309-10 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 637 n. 19 (1985)).[9]  An arbitration provision violates the

effective vindication doctrine in one of two ways.  *Id.*  First, "a provision in an

arbitration agreement forbidding the assertion of certain statutory rights" is

unenforceable.  *Id.*  Second, an arbitration provision imposing prohibitive costs that

prevent a plaintiff from accessing the arbitral forum is unenforceable.  *Id.*; *Shankle v. B-G*

*Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (holding arbitration

---

arbitration agreement including effective vindication and unconscionability.  *Id.* at 68-75.  However, aside
from a heading which hints at this argument, Defendant fails to make it.  *Doc. 8* at 5; *but see doc. 21* at 14-
17 (argument from Plaintiff on this point in response brief); *see doc. 24* (no reply on the issue from
Defendant).  Thus, the Court will not address it.

[8] *See infra* n. 28.

[9] The majority expressed a healthy skepticism about the validity of this doctrine describing it as a judge-
made exception founded on dictum and noting that the Supreme Court had never invalidated an
arbitration agreement on the basis of the doctrine.  *Am. Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304,
2310 (2013).  Nonetheless, the Tenth Circuit Court of Appeals has held that the doctrine is viable and,
barring an explicit rejection of the doctrine by the Supreme Court, this Court will apply it.  *See Shankle v.
B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999).

provision unenforceable in its entirety where it required the parties to equally share in arbitrator fees (estimated to be between $1,875 and $5,000) that the plaintiff, a janitor, as well as others similarly situated, would unlikely be able to afford).

1.  *The Damages Limitation and Attorney Fee Allocation Terms Violate the Effective Vindication Doctrine*

Even though the RAL Agreement does not explicitly prohibit a party from raising statutory claims relating to the loan, it unequivocally limits Plaintiff's ability to vindicate her statutory rights.  First, the arbitration agreement limits the damages that an arbitrator may award claims relating to the loan to "actual compensatory, economic damages." *Doc. 24,* Ex. A at 2.  Second, it provides that each party "shall bear the expense of their respective attorney's fees regardless of which party prevails." *Id.* These provisions are in direct conflict with statutory remedies available under the Truth in Lending Act (TILA).  TILA entitles a prevailing plaintiff to actual damages *and* "twice the amount of any finance charge in connection" *and* "the costs of the action" *and* "a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1640(a)(1).

Thus, if enforced, the damages limitation and the attorney fees prohibition would prevent Plaintiff from obtaining important statutory remedies should she prevail.  As a result, these provisions are unenforceable under the effective vindication doctrine. *See Hill v. Ricoh Am. Corp.,* 603 F.3d 766, 779-80 (10th Cir. 2010) (holding by implication that an arbitration provision is unenforceable where it does not, on its face, permit the arbitrator to award statutory rights, such as attorney's fees); *Hadnot v. Bay,*

*Ltd.*, 344 F.3d 474, 478-79 (5th Cir. 2003) (arbitration provision's "ban on punitive damages is unenforceable in a Title VII case" under effective vindication doctrine); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (same for treble damages in Sherman Act case).

    2.   *The Fee Sharing Clause does not Violate the Effective Vindication Doctrine*

       An arbitration provision is also unenforceable under the effective vindication doctrine where it imposes prohibitive costs that would prevent a plaintiff, and other similarly situated potential litigants, from accessing the arbitral forum. *Shankle*, 163 F.3d at 1230; *Sanchez v. Nitro-Lift Tech., LLC*, 762 F.3d 1139 (10th Cir. 2014) ("[I]f the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute.") (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir. 2003)). "[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Hill*, 603 F.3d at 780 (quoting *Green tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000)).

Were arbitration compelled in this case in accordance with the RAL Agreement, the total cost to Plaintiff would be approximately $762.50.[10]  The Court is not convinced that this amount is "so high as to make access to the forum impracticable."  *Am. Express*, 133 S. Ct. at 2310-11.  In *Shankle,* the cost-sharing term resulted in an estimated cost of between $1,875 and $5,000.  163 F.3d at 1234.  The court found that the plaintiff, a janitor, as well as others similarly situated, would unlikely be able to afford that amount.  *Id.* at 1234.  Nothing in the record demonstrates an inability on the part of Plaintiff, or others similarly situated, to pay the costs as called for by the RAL Agreement.  For her part, Plaintiff has not alleged financial hardship, paid $400 in filing fees to bring suit in federal court, and did not seek *in forma pauperis* status.  Thus, there is nothing to suggest that $762 in arbitration costs, a significantly lower amount than in *Shankle*, would have prohibited Plaintiff from accessing the arbitral forum.  Accordingly, the fee sharing clause does not violate the effective vindication doctrine.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff first argues that *any* cost would be a "substantial burden in light of the limits on Plaintiff's potential recovery under the agreement."  *Id*. at 13.  But courts relying on *Shankle* have

---

[10] Under the applicable AAA Rules and the RAL Agreement, Plaintiff would be responsible for a $200 initial filing fee plus an equal share of the arbitrator's fees.  *Doc. 24*, Ex. A, at 2.  The applicable arbitrator's fees would include the arbitrator's compensation rate for desk arbitrations, which is set at a flat fee of $750 plus the cost of a "Preliminary Management Hearing," which is one half the desk arbitration rate, or $375.  *CAR* at 33, 37.  Because the claim would likely be resolved through desk arbitration, travel and other expenses would be minimal.  The total cost to Plaintiff including fees and the arbitrators compensation would therefore be approximately $762.50 (the initial filing fee ($200) plus one half of the arbitrator's compensation for the preliminary hearing ($187.50) and one half of the cost of the compensation rate for desk arbitrations ($375)).

emphasized the ability of a plaintiff to pay such fees—not the amount of the fees relative to the claim.  *See, e.g., Fuller v. Pep Boys—Many, Moe & Jack of Del., Inc.*, 88 F. Supp. 2d 1158, 1161 (D. Colo. 2000); *Clary v. The Stanley Works*, 2003 WL 21728865, *6-7 (D. Kan. 2003); *but see Owner-Operator Indep. Drivers Ass'n v. C.R. England, Inc.*, 325 F. Supp. 2d 1252, 1261-62 (D. Utah 2004).  Moreover, the Supreme Court's decision in *American Express* explicitly distinguished between being able to access an arbitral forum and having no economic incentive to do so.  Justice Scalia, writing for the Court, trenchantly emphasized that "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy."  *Id.* at 2311 (emphasis in original) (holding contractual prohibition on class action suit and requirement of bilateral arbitration was enforceable even though the estimated costs of proving cause action would be "at least several hundred thousand dollars," whereas the maximum potentially recovery for each individual plaintiff was $38,549).

Plaintiff also argues that the cost-splitting clause is "inherently inconsistent with the policies and purposes of [TILA]" because the Act entitles successful plaintiffs to "the costs of the action."  *Id.* at 13 (citing 15 U.S.C. § 1640(a)(3)).  However, the Court's decision herein declaring the limitation on recovery to "actual compensatory, economic damages" unenforceable renders this argument moot.  Should this case proceed to arbitration without that limitation, there is no reason to presume that the arbitrator

would not award such costs to Plaintiff in accordance with TILA, were Plaintiff to prevail in arbitration. *Hill*, 603 F.3d at 780 (10th Cir. 2010) (courts are not to presume "that [statutory rights] would not be vindicated . . . based on an unsupported assumption that the arbitrator will be hostile to th[ose] substantive rights").

### V. AMBIGUITY IN FEE SHARING CLAUSE

While the Court concludes that the fee sharing clause does not violate the effective vindication doctrine, it suffers from a different problem – ambiguity. As detailed above, the clause states that "the parties shall share equally the fee of the arbitrator." *Doc. 47*, Ex. 1, at 2 & Ex. 3, at 2. Earlier in the arbitration provision however, the parties agree that "any claim or dispute . . . shall be exclusively resolved . . . by binding arbitration pursuant to this arbitration provision and the applicable rules of the American Arbitration Association ('AAA') in effect at the time the claim is filed and the AAA Consumer Due Process Protocol." *Id*. Those rules require that the consumer pay only a $200 nonrefundable filing fee "unless the parties' agreement provides that the consumer pay less"—not more. *CAR* at 34. The business, on the other hand, is to pay a filing fee of $1500 or $2000, depending on number of arbitrators. *Id*. The business is also required to "pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." *Id*. at 33-34. Further still, the rules require that "[a]ll expenses of the arbitrator, including required travel and other expenses, and any AAA expenses . . . shall be borne by the

business." *Id*. at 35.  Thus, the RAL Agreement's requirement that the parties share equally in the fee of the arbitrator conflicts with its other requirement that the Consumer Arbitration Rules apply, which require the business to bear the brunt of the filing fee and to pay the arbitrator's compensation and expenses.

Under New Mexico law, "[a] contract is ambiguous if separate sections appear to conflict with one another or when the language is reasonably and fairly susceptible of more than one meaning."  *Heye v. Am. Golf Corp., Inc*., 80 P.3d 495, 499 (N.M. Ct. App. 2003) (citing *Allsup's Convenience Stores, Inc. v. North River Ins. Co*., 976 P2d 1 (N.M. 1998)).  When ambiguous, the court is to "construe ambiguities . . . against the drafter to protect the rights of the party who did not draft it."  *Id*. (citing *W. Farm Bureau Ins. Co. v. Carter*, 979 P.2d 231 (N.M. 1999)).

Given the clear conflict on the matter of cost sharing, the arbitration clause must be construed against the drafter – Defendant S/W Tax Loans, Inc.  Thus, the clause requiring equal cost sharing of the fee of the arbitrator is trumped by the fee allocation provisions of the AAA's Consumer Arbitration Rules.

## VI. SEVERABILITY OF UNENFORCEABLE TERMS IN ARBITRATION PROVISION

Having found that the damages limitation and the prohibition on awarding attorney's fees violate the effective vindication doctrine, the next question is whether the specific offending terms can be excised.  While there is no controlling caselaw on point, both parties agree that this determination is controlled by state contract law, even

though the effective vindication doctrine is a federal doctrine. *See docs. 46, 53*; *Spinetti v. Serv. Corp. Intern.*, 324 F.3d 212, 219 (3d Cir. 2003) (applying state contract law of severability to terms that violated the effective vindication doctrine); *Morrison*, 317 F.3d at 674 (same).

Under New Mexico law, a specific term in an arbitration provision is independently severable unless it is "central to the arbitration scheme" such that severance would require "substantially altering the method of dispute resolution contractually agreed on by the parties." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 819 (N.M. 2011)).[11]  As this standard is easier described than applied, a review of New Mexico Supreme Court cases on the issue is in order.

In *Rivera*, the parties had identified a particular arbitration provider ("NAF") in their arbitration agreement. *Id*. at 807.  However, by the time of the lawsuit, that provider was no longer available having been barred from participating in consumer dispute arbitrations. *Id*. at 808-09.  The agreement not only identified the arbitration provider, but mandated that the arbitration would be conducted under the rules of that provider. *Id*. at 813-14.  The consumer was directed to use that provider's forms and was given its contact information to obtain more information about the procedures. *Id*.

---

[11] In addition to relying on the effective vindication doctrine, Plaintiff argues that the terms she challenges are unconscionable under state law.  Because the challenged terms are unenforceable due to the effective vindication doctrine and contractual ambiguity, this alternate basis is moot.  Moreover, a finding that the terms are unconscionable would not impact the severability analysis because the same test would be applied if the event of such a finding.  Thus, the Court need not separately address Plaintiff's unconscionability argument.

at 814.  Although the arbitration provision contained a severability clause, the court

concluded that it was insufficient to control the result.  The court explained that

"[g]iven the number of references to the NAF as the only named arbitrator and

substantial reliance on the NAF Code of Procedure throughout the contract, we could

not sever the unenforceable terms of the arbitration provisions without substantially

rewriting the contract."  *Id*. at 815.

Later in *Rivera*, the court turned to another invalid term in the arbitration

provision.  This term dictated that, while the consumer/borrower was restricted to

arbitration, the lender was permitted to go to court for its preferred remedies.  *Id*.  Due

to the one-sided nature of the arbitration provision, the court, as it had in the earlier

case of *Cordova v. World Finance Corp. of NM*, 208 P.3d 901 (N.M. 2009), held that it was

unconscionable.  Having done so, the court turned to the issue of severability:

> The title loan contract in this case contains numerous provisions that are
> unenforceable either because they refer to the NAF or because they are
> unfairly one-sided and substantively unconscionable. Arbitration before
> the NAF using the NAF Code of Procedure was integral to the parties'
> agreement to arbitrate, and to appoint a substitute arbitrator would
> constitute a wholesale revision of the arbitration clause.  Additionally, as
> in *Cordova* the unconscionable terms are central to the arbitration scheme
> and cannot be severed without substantially altering the method of
> dispute resolution contractually agreed on by the parties.  This Court's
> duty is confined to interpretation of the contract which the parties made
> for themselves.  We will not perform judicial surgery by rewriting a
> contract that is laced with unenforceable terms that were central to the
> original mechanism for resolving disputes between the parties.  We hold
> that the arbitration provisions must be struck from the contract in their
> entirety.

19

*Id*. at 819 (quotations and citations omitted).

The remaining New Mexico Supreme Court case on the severability of invalid terms from an arbitration clause is *Padilla v. State Farm Mutual Auto Insurance Co.*, 68 P.3d 901, 909 (N.M. 2003).  In *Padilla*, the plaintiff's insurance contract provided for mandatory arbitration, which would be binding on both parties for any award of damages that does not exceed a certain limit.  *Id*. at 902.  For awards over the limit, the contract provided that the arbitration was subject to *de novo* appeal by either party.  *Id*. Plaintiff sought a declaratory judgment in district court nullifying the *de novo* appeal language as contrary to New Mexico law.  *Id*.  The court held that the term was indeed unconscionable and could not be enforced.  *Id*. at 906-07.  The court then turned to the issue of severability and explained that "[t]o avoid the unconscionable result, we strike the de novo appeal provision in the contract and leave the remainder of the contract intact. Because the appeal provision is severable from the agreement to arbitrate, the insurance contract now contains a mutual agreement to binding arbitration."  *Id*. at 909.

Given this review, the Court must determine whether the arbitration clause must be struck in its entirety or can be reformed into a "fair and balanced" agreement. *Cordova*, 208 P.3d at 911.  Are the terms deemed unenforceable above "central to the arbitration scheme" such that severing them from the remainder of the arbitration provision would require "substantially altering the method of dispute resolution

contractually agreed on by the parties"?  *Rivera*, 259 P.3d at 819.  The Court answers this final question in the negative.

First, the invalidated terms here are not "central" to the arbitration scheme as that term has been explained by the New Mexico courts.  In *Rivera* and *Cordova,* the invalidated terms governed perhaps the most important question in an arbitration provision -- what claims can and/or must be resolved in arbitration.  *See Rivera*, 259 P.3d at 815-19; *Cordova*, 208 P.3d at 911; *see also Figueroa v. THI of N.M. at Casa Arena Blanca, LLC,* 306 P.3d 480, 494 (N.M. Ct. App. 2012) ("Here, like the arbitration clauses in *Cordova* and *Rivera*, the exemptions of certain claims from arbitration are so central to the agreement that they are incapable of separation from the agreement to arbitrate, irrespective of any savings clause included in the agreement.").  In the instant case, the Court has declared only two remedial limitations to be invalid.  While important, available remedies are far less central to the arbitration scheme than the threshold question of which claims may be brought that were governed by the unconscionable terms in *Rivera* and *Cordova*.  Similarly, the availability of particular remedies is less central than the specific choice of arbitral forum which dictates every rule and procedure of the arbitration.  *See Rivera*, 259 P.3d at 814, 819.

Second, severing the invalid terms here does not require complicated "'judicial surgery' [of] a contract laced with unenforceable terms…."  *Rivera*, 259 P.3d at 819.  Instead, the procedure is fairly straightforward: by excising two sentences, the

arbitration agreement becomes "fair and balanced" and permits Plaintiff to effectively vindicate her statutory rights.  In this fashion, the offending terms are more akin to the severable *de novo* appeal term in *Padilla* than the pervasive, unseverable terms in *Rivera*.

Thus, the Court holds that, under New Mexico law, the terms found invalid by this Court are severable from the remainder of the arbitration provision.  *Cf., Kepas v. eBay*, 412 F. App'x 40, 49-50 (10th Cir. 2010) (invalid cost-shifting term severable from arbitration provision under California law); *Hadnot v. Bay, Ltd*., 344 F.3d 474, 478 (5th Cir. 2003) (severing term banning punitive and exemplary damages from remainder of arbitration provision); *Spinetti v. Serv. Corp. Intern*., 324 F.3d 212, 219-23 (3d Cir. 2003) (severing term prohibiting award of attorney fees and costs to prevailing party from remainder of arbitration provision under Pennsylvania law).  Accordingly, the Court concludes that Plaintiff's claims for relief are subject to arbitration pursuant to the arbitration provision as reformed herein.  Therefore, the Court will stay the suit as to her individual claims pending arbitration.  *See* 9 U.S.C. § 3.

## VII.    CLASS ACTION CLAIMS

The arbitration provision states in capital letters that "I acknowledge that I will not have the right to participate as a representative or member of any class of claimant pertaining to any claim subject to arbitration."  *Doc. 47*, Ex. 1, at 2 & Ex. 3, at 2.  This bar is enforceable and Plaintiff's class action claims fall within it.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750-52 (2011).  Therefore, those claims will be dismissed

without prejudice.  *See Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000).

### VIII.   CONCLUSION

The Court finds that Plaintiff signed and agreed to the RAL Agreement, including its arbitration provision.  That provision, however, contains terms which deny her the ability to effectively vindicate her statutory rights.  Specifically, the terms that limit the remedies, which would be otherwise available to her by statute, are invalid.  Moreover, the term requiring the parties to equally share the arbitrator's fees directly conflicts with the term making the arbitral forum's rules applicable, which outline a different cost-sharing schedule altogether.  The Court finds that these terms can be severed from the remainder of the arbitration provision, and the remainder is enforceable.  The remainder dictates that, upon election of either party, the claims in the instant suit are subject to arbitration under the contract.  Because the claims are subject to arbitration, the provision bars Plaintiff from bringing them as the representative for a class action.

Therefore, the Court hereby COMPELS arbitration pursuant to the arbitration provision without the stricken two sentences.[12]  The Court hereby STAYS the case until

---

[12] "The parties hereto further agree that any award hereunder shall be based on and limited to the claimant's actual compensatory economic damages.  Each party hereto shall bear the expense of their respective attorney's fees regardless of which party prevails, but the parties shall share equally the fee of the arbitrator."

23

such arbitration has occurred.  The Court hereby DISMISSES Plaintiff's class action

claims without prejudice.

IT IS SO ORDERED.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**